IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01130-PAB-CBS

RONALD CORDOVA #57350,
Plaintiff,
v.

SGT. R. DOWLING;
P.A. TED LAURENCE;
P.A. TEJINDER SINGH;
C/O MATTHEW ALLPHIN;
LT. ROD GLISSMAN;
C/O DIANA HILLYER;
C/O DAVID JOHNSON;
CAPT. KEVIN VORWALD; and
SGT. JASON MOON;
Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

Magistrate Judge Craig B. Shaffer

THIS MATTER comes before the court on "Defendants' Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Rule 12(b)(6), or Alternatively, for Summary Judgment on Claim 3 for Failure to Exhaust Administrative Remedies" ("Motion to Dismiss") (doc. #41) filed December 5, 2011. Pursuant to the Memorandum dated December 6, 2011, this matter was referred to the Magistrate Judge. The *pro se* Plaintiff, Ronald Cordova, filed his Response (doc. #51) on January 23, 2012. On February 3, 2012, Defendants filed their Reply (doc. #54). Having carefully considered the arguments presented in the parties' briefs, as well as applicable case law, the court recommends that Defendants' Motion to Dismiss be granted.

## BACKGROUND

Ronald Cordova is in the custody of the Colorado Department of Corrections ("CDOC") and was originally incarcerated in the Arkansas Valley Correctional Facility ("AVCF"). *See* Amended Complaint ("AC") (doc. #17, at page 10 of 26). On February 9, 2009, Mr. Cordova was transferred from AVCF to the Sterling Correctional Facility ("SCF"). *Id.* Both AVCF and SCF are managed and operated by the CDOC. Plaintiff brings this case pursuant to 42 U.S.C. § 1983 against ten former and current CDOC employees.

Claim One is against Defendant Dowling for violations of the Eighth Amendment, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act. Mr. Cordova alleges that while he was housed in the AVCF, he was subjected to cruel and unusual punishment and discrimination because of his disability. Plaintiff alleges that Defendant Dowling filed disciplinary charges against him for unauthorized use of a handicapped area. *Id.* at 7. Mr. Cordova states that he was found guilty of the charge, which resulted in "sanction[s], los[s] of privileges, [being moved to a] single cell, and pain [and] suffering [from] walking up and down steps [ ] with a full food tray [a]nd trying to walk with crutches." *Id.* at 8.

Claim Two is for deliberate indifference to a serious medical need in violation of the Eighth Amendment against Defendants Laurence, Singh, and Chamjock. Plaintiff states that he has a history of knee injuries since 1963. *Id.* at 9. Mr. Cordova alleges that Defendants "failed to provide promise[d] follow up treatment [and] care." *Id.* at 9.

In his Claim Three, Mr. Cordova sues Defendants Allphin, Glissman, Hillyer, Johnson, and Vorwald for use of excessive force in violation of the Eighth Amendment. Plaintiff states that on or about July 27, 2009, he was told to move to a second tier top bunk in Unit 2. Mr. Cordova alleges that he went to speak with Officer Smith about being moved when he was

"blindsided from [his] left side and knock[ed] to the ground" by Defendant Allphin. *See* AC (doc. #17, at page 11 of 26). Plaintiff claims that he was "beaten by [Defendants Allphin, Glissman, Hillyer, and Johnson] . . . . handcuffed" and taken to Defendant Vorwald's office. Mr. Cordova alleges that Defendant Vorwald "failed to intervene and stop the [use of] excessive force." *Id.* at 12.

Claims 4 and 5 were dismissed pursuant to Senior Judge Babcock's Order dated September 26, 2011. (doc. #19).

Claim Six is against Defendant Moon for interference with prison mail in violation of the First Amendment. Mr. Cordova specifically claims that: "[his] magazines are being destroyed prior to him receiving them; [m]ailroom staff [is] deliberately with[holding] mail to [his] sister and [has] also failed to give [him] mail; and [his] mail has been sent back to sender, without a notice of rejection." *Id.* at 20.

**STANDARD OF REVIEW**

Rule 12(b)(6) of the Federal Rules of Civil Procedure states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). *See also Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir. 1985) ("[A] rule 12(b)(6) motion is addressed to the face of the pleading."). The court must accept the well-pleaded allegations of the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff. *See Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006). However, to withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242,

1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). A complaint must set forth sufficient facts to elevate a claim above the level of mere speculation. *Robbins*, 519 F.3d at 1247.

Defendants move to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative, for summary judgment on Claim 3 pursuant to Fed. R. Civ. 56. Defendants argue that Plaintiff failed to exhaust administrative remedies as to Claim Three. "Under the holding of *Jones v. Bock*, 549 U.S. 199 (2007), exhaustion is an affirmative defense that must be raised by the defendants." *Blay v. Reilly*, 2008 WL 2020286, at *1 n. 1 (D. Colo. May 9, 2008). Therefore, Mr. Cordova need not plead or demonstrate exhaustion in his complaint. *Jones*, 549 U.S. at 216-17.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. *Celotex Corp. v. Calrett*, 477 U.S. 317 323 (1986); *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir. 1991). The movant need not negate the non-movant's claim, but need only to point to an absence of evidence to support the non-movant's claim. *Celotex*, 477 U.S. at 325; *John Hancock Mut. Life Ins. Co. v. Weisman*, 27 F.3d 500, 503 (10th Cir. 1994). If the moving party meets this burden, the non-moving party may not rest upon his pleadings, but must come forward with specific facts showing that there is a genuine issue for trial as to the elements essential to the non-moving party's case. Fed. R. Civ. P. 56(c).

Finally, "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106,

1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "The *Haines* rule applies to all proceedings involving a pro se litigant, including . . . summary judgment proceedings." *Hall*, 935 F.2d at 1110 n. 3 (citations omitted). However, the court cannot be a pro se litigant's advocate. *Yang v. Archuleta*, 525 F.3d 925, 927 n. 1 (10th Cir. 2008).

**ANALYSIS**

*A. Claims One and Two - Statute of Limitations*

Defendants seek dismissal of Claims One and Two on grounds that the applicable statute of limitations has expired. While the statute of limitations is ordinarily an affirmative defense, "the issue may be resolved on a Rule 12(b)(6) motion to dismiss where the application of the limitations period 'is apparent on the face of the complaint.'" *Handy v. Pascal*, 2011 U.S. Dist. LEXIS 125980, at *22 (D. Colo. Aug. 29, 2011).

"[L]imitations periods in § 1983 claims are to be determined by reference to the appropriate state statute of limitations." *Hardin v. Straub*, 490 U.S. 536, 539 (1989). "In Colorado, actions brought under § 1983 are governed by the two-year statute of limitations . . . ." *Handy*, 2011 U.S. Dist. LEXIS 125980, at *22. *See* Colo. Rev. Stat. § 13-80-102(1)(g) ("The following civil actions . . . shall be commenced within two years after the cause of action accrues, and not thereafter: all actions upon liability created by a federal statute where no period of limitations is provided in said federal statute.").

"While state law governs the limitations period applicable to § 1983 claims, federal law specifies when a § 1983 claims accrues." *Handy*, 2011 U.S. Dist. LEXIS 125980, at *23 (citing *Newcomb v. Ingle*, 827 F.2d 675, 678 (10th Cir. 1987)). A cause of action pursuant to § 1983 "accrues when the plaintiff knows or should know that his or her constitutional rights have been

violated." *Smith v. Ortiz*, 2006 U.S. App. LEXIS 6562, at *15 (10th Cir. Mar. 14, 2006) (internal quotation marks and citations omitted).

> Under the traditional rule of accrual . . . the tort cause of action accrues, and the statute of limitation begins to run, when the wrongful act or omission results in damages. The cause of the action accrues even though the full extent of injury is not then known or predictable.

*Wallace v. Kato*, 549 U.S. 384, 391 (2007). Plaintiff's civil action was filed on April 28, 2011. Therefore, the conduct that forms the basis for Claims One and Two must have occurred after April 28, 2009.

Plaintiff's Claim One alleges violations of the Eighth Amendment and the ADA,[1] arising out of incidents involving Defendant Dowling, while Mr. Cordova was housed at the AVCF. Mr. Cordova alleges that on November 26, 2008, Defendant Dowling approached him while he was sitting in an area reserved for handicapped inmates and asked Plaintiff why he was there. Plaintiff responded that he was authorized to use the area due to his knee injury. Mr. Cordova alleges that Defendant Dowling continued to harass and threaten him from December 11-14, 2008. *See* AC (doc. #17, at page 7 of 26). Plaintiff further alleges that in December 2008, Defendant Dowling filed disciplinary charges against him for unauthorized use of a handicapped area, which resulted in sanctions, loss of privileges, pain and suffering, etc. *Id.* at 8. The alleged conduct giving rise to Mr. Cordova's Claim One occurred in November and December 2008.

---

[1] Although Plaintiff does not make a claim under a specific Title of the ADA, Plaintiff's claim is properly brought pursuant to Title II of the ADA. Title I of the ADA addresses employment discrimination. 42 U.S.C. §§ 12111 to 12117. Title II of the ADA prohibits discrimination on the basis of disability. 42 U.S.C. §§ 12131 to 12134. Title III of the ADA covers access for individuals with disabilities in places of public accommodation. 42 U.S.C. §§ 12181 to 12189.

Claim One fails to state a claim under the ADA and the Rehabilitation Act because, as stated in the Amended Complaint, Plaintiff is suing Defendants in their individual capacities only. "Individual defendants in their individual capacities are not properly subject to suit under the Rehabilitation Act or the [ADA]." *Montez v. Romer*, 32 F. Supp. 2d 1235, 1239 (D. Colo. 1999). *See also Nasious v. Colorado*, 2011 WL 2601015, at *12 (D. Colo. June 29, 2011) ("Title II of the ADA does not provide for suit against an official of a public entity in their individual capacity."). Therefore, the court need not address the statute of limitations of Mr. Cordova's ADA claim.

Plaintiff does not allege any conduct by Defendant Dowling after December 2008 and by Mr. Cordova's own statement, he was transferred to the SCF on February 9, 2009. *See* AC (doc. #17, at page 10 of 26). Giving Plaintiff the most leeway, the latest date that any conduct by Defendant Dowling, giving rise to a constitutional violation, could have occurred is February 9, 2009. In order for Plaintiff's Claim One to survive his initial complaint would have had to be filed on or before February 9, 2011. Plaintiff's civil suit was initiated on April 28, 2011; therefore, Claim One is barred by the statute of limitations.

Plaintiff contends the statute of limitations should have been tolled during the time he was exhausting administrative remedies, and therefore, the statute of limitations on Claim One did not begin to run until Plaintiff received a response to his Step 3 Grievance against Defendant Dowling. Plaintiff cites several cases from other circuits for this preposition; however, the Tenth Circuit has not adopted this approach. In the Tenth Circuit, "the statute of limitations is not automatically tolled whenever an individual pursues administrative remedies." *Braxton v. Zavaras*, 614 F.3d 1156, 1160 (10th Cir. 2010). Furthermore, "Colorado law favors a case-by-case approach to tolling . . ." *Id*. "In a § 1983 action, state law governs any tolling of the statute of limitations period, except that federal law might also allow additional equitable tolling in rare circumstances." *Brown v. Whitman*, 651 F. Supp. 2d 1216, 1220 (D. Colo. 2009) (quoting *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008) (internal quotation marks omitted)). Plaintiff has the burden to demonstrate that the statute of limitations should be tolled. *Brown*, 651 F. Supp. 2d at 1220-21 (citing *Garrett v. Arrowhead Improvement Ass'n*, 826 P.2d 850, 855 (Colo. 1992)). Under Colorado law the statute of limitations may be equitably tolled where the defendant's wrongful conduct prevented the plaintiff from timely filing his claims. *Brown*, 651 F. Supp. 2d at 1221.

In this case, Plaintiff alleges that he filed a Step 1 Grievance against Defendant Dowling on December 29, 2008, for which he received a response on January 20, 2009. Mr. Cordova states that he proceeded with his Step 2 Grievance within five days, but due to delays in the CDOC's response, his Step 3 Grievance was not filed until June 5, 2008. Even assuming the CDOC failed to timely respond to Mr. Cordova's grievance, this is not a case where equitable tolling applies. The CDOC has an administrative grievance procedure set forth in Administrative Regulation 850-04 ("AR 850-04"). The CDOC's grievance procedure specifically provides for the situation where an inmate does not receive a timely response to his or her grievance, which Mr. Cordova cites in his Response. Pursuant to AR 850-04 § IV(H)(1)(d), "[i]n the event the time limit concerning any step of the process expires without a response, the offender may proceed to the next step within five calendar days of the date the response was due." *See* Exhibit A-1 (doc. #41-1, at page 10 of 24), attached to the Decesaro Affidavit. *See also* Response (doc. #51, at page 2 of 15). Plaintiff claims that the statute of limitations should be tolled because his efforts to exhaust were delayed by the CDOC's failure to respond; however, Plaintiff could have proceeded to the next step of the grievance process. Therefore, equitable tolling does not apply.

Mr. Cordova's Claim Two is for deliberate indifference in violation of the Eighth Amendment for "failure to provide promise[d] follow up treatment/care." *Id.* at 9. Plaintiff states that "[f]or over twenty years [ ] I have suffered [ ] excruciating pain when [my] knees would give out" and that he has received "NO treatment or care…." *Id.* Plaintiff alleges that "[o]n November 14, 2001[,] when [he] was examined by Dr. Patterson," he was told he was going to be given surgery on his knees. *Id.* at 9.

Mr. Cordova alleges on November 8, 2008, he was seen by Defendant Laurence, who "refused to examine or treat" Plaintiff. *See* AC (doc. #17, at page 10 of 26). Plaintiff further

alleges that the "following day [he] was seen by [Defendant] Singh" who "was rude and aggressive in [his examination], twisting and causing [Plaintiff] pain." *Id.* The alleged conduct giving rise to a constitutional violation by Defendants Laurence and Singh occurred on November 8 and 9, 2008. Mr. Cordova's claim against Defendant Chamjock arises from a medical examination that was conducted when Plaintiff was transferred to SCF in February 2009. Therefore, in order for Plaintiff's Claim Two to survive against any Defendants, Plaintiff's complaint would need to be filed by February 2011. Because Mr. Cordova filed his initial complaint several months after the statute of limitations had expired, here, as in Claim One, Plaintiff's claim is barred.

Plaintiff responds to Defendants' statute of limitations argument by asserting the continuing violations doctrine. Mr. Cordova states Defendants Laurence, Singh, and Chamjock "continued to follow a pattern of deliberate indifference to [P]laintiff's [promised] follow-up medical surgery . . . . This is an on-going claim of deliberate indifference." *See* Response (doc. #51, at page 4 of 15).

The continuing violation doctrine, employed in Title VII litigation, allows "a plaintiff to challenge incidents that occurred outside" the limitations period "if the incidents are sufficiently related and thereby constitute a continuing pattern of wrongful conduct." *Georgacarakos v. Wiley*, 2012 WL 850430, at * 8 (D. Colo. Feb. 1, 2012) (quoting *Fogle v. Pierson*, 2008 WL 821803, at *5 (D. Colo. Mar. 26, 2008) (internal quotation marks and citation omitted)). "The Tenth Circuit has not applied the continuing violations doctrine to Section 1983 or *Bivens* claims." *Georgacarakos*, 2012 WL 850430, at * 8. However, because Plaintiff has failed to allege any ongoing violations, his claims would be time-barred even if the continuing violation doctrine applied.

Mr. Cordova complains of specific incidents where Defendants were deliberately indifferent to his medical needs. Plaintiff does not allege conduct by Defendant Laurence, Singh, or Chamjock, that occurred after February 2009. Mr. Cordova's claims against Defendants Laurence, Singh, and Chamjock arise out of separate medical visits Plaintiff had with each Defendant. Mr. Cordova's Amended Complaint does not allege actions that constitute continuing constitutional violations. Rather, it identifies discrete incidents, the latest of which occurred on or about February 10, 2009. Furthermore, there is no allegation that Defendants Laurence and Singh, employees of AVCF, ever saw Plaintiff again after he was transferred to SCF. Although Mr. Cordova alleges that he continues to suffer pain from his knee injury the continuing violation doctrine does not apply to single discrete acts with continuing consequences. *See Georgacarakos*, 2012 WL 850430, at * 8.

*B. Claim Three - Failure to Exhaust*

Defendants seek judgment in their favor on Claim Three for use of excessive force in violation of the Eighth Amendment; Defendants contend that Plaintiff has failed to exhaust his administrative remedies as to this claim. The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1977e(a). The "PLRA's exhaustion requirement applies to all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Even where the "available" remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available. *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citing *Booth v. Churner*, 532 U.S. 731 (2001) (holding that even where an inmate sought money damages and the grievance process did not

permit such awards, exhaustion was required as long as there was authority to take some responsive action)). The PLRA requires "proper exhaustion" of administrative remedies, which means the plaintiff must utilize all administrative remedies provided and must comply with all the deadlines and other procedural rules prior to filing a federal lawsuit. *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

The PLRA's requirement that an inmate exhaust all available administrative remedies before initiating suit is mandatory. *See Woodford*, 548 U.S. at 85 ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). *See also Jones*, 549 U.S. at 210-12 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Exhaustion must occur before the filing of the lawsuit, not while it is pending. *See Porter*, 534 U.S. at 523-25. *See also Jernigan*, 304 F.3d at 1032-33 ("An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies."). In this case, the court must determine whether Mr. Cordova met his obligation under the PLRA by completing each step in the Grievance Process; if he has not, this claim must fail.

AR 850-04 requires inmates to file a Step 1 Grievance "no later than 30 calendar days from the date the offender knew, or should have known, of the facts giving rise to the grievance." *See* Exhibit A-1 (doc. #41-1, at page 10 of 24), attached to the Decesaro Affidavit. In his Step 1 Grievance, Plaintiff stated "I just want to exhaust the grievance system and file a lawsuit in federal court." *Id.* at 20. Mr. Cordova has failed to request a "meaningful response, action, or redress" as required by CDOC's grievance process. *Id.* at 6.

Furthermore, Mr. Cordova was notified of the procedural error and had opportunity to correct the error and re-file. On August 26, 2009, Plaintiff acknowledged receipt of a Response to his Step 1 Grievance. Response to Step 1 Grievance states, "[y]ou have not made any request for any Remedy. This complaint has been denied at this level on procedural grounds." *Id.* at 21. Plaintiff did not request relief in his Step 2 grievance, which states "D.O.C. never gives the relief requested. . . . I could have asked that all officer[s] be repremanded [sic] for their conduct. But I NO [sic] that will never happen." *Id.* at 22.

Plaintiff's Step 3, again fails to request relief, "if I had request relief . . . nothing would ever come." *Id.* at 23. CDOC's Response to Mr. Cordova's Step 3 Grievance states "I could not determine from your step 3 grievance or any other step, what relief you are asking for. When drafting a grievance you must include what remedy you are seeking . . . . You failed to follow the grievance procedure in this matter, you have <u>not</u> exhausted your administrative remedies." *Id.* at 24 (emphasis in original). "When a grievance is denied for a procedural error . . . the offender has not exhausted the grievance process." *Id.* at 9.

Defendants further contend that Plaintiff failed to timely file his Step 3 Grievance. The parties do not dispute that Mr. Cordova acknowledged receipt of a response to his Step 2 Grievance on September 17, 2009. Pursuant to AR 850-04 a written grievance must be submitted "within five calendar days of receiving the written response to the previous step" in order to proceed to the next step in the grievance process. *See* Exhibit A-1 (doc. #41-1, at page 10 of 24), attached to the Decesaro Affidavit. Grievances are filed with an inmate's case manager. *Id.* at 9. There is a dispute as to when the Step 3 Grievance was filed. Defendants contend that Plaintiff's Step 3 Grievance was filed on September 28, 2009, which is outside the time limits proscribed by AR 850-04. Plaintiff argues that he filed his Step 3 Grievance on

September 18, 2009. *See* Response (doc. #51, at page 5 of 15). Plaintiff alleges that the case manager "post-dat[ed] the grievance." *Id.* Because the court finds that Plaintiff failed to request relief at any step in the grievance process, which is a procedural error that results in a failure to exhaust, it is unnecessary for the court to determine whether Plaintiff's Step 3 Grievance was timely.

*C. Claim Six - Personal Participation*

Claim Six is against brought Defendant Moon for various alleged violations involving Plaintiff's mail. Defendants argue that Claim Six should be dismissed for failure to state a claim because Plaintiff has not alleged personal participation by Defendant Moon.

Individual liability under § 1983, regardless of the particular constitutional theory, must be based upon personal responsibility. *See Foote v. Spiegel*, 118 F.3d 1416, 1423-24 (10th Cir. 1997) (individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation) (citation omitted); *Mitchell v. Maynard*¸ 80 F.3d 1433, 1441 (10th Cir. 1996) (personal participation is an essential allegation in a civil rights action) (citation omitted); Before liability may be imposed, a supervisor must have "participated or acquiesced" in the conduct which constitutes a constitutional deprivation. *See Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988). Section 1983 does not authorize liability under a theory of respondeat superior. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Worrell v. Henry*, 219 F.3d 1197, 1214 (10th Cir. 2000). "Supervisors are not strictly liable for the torts of their underlings; instead, they are liable only when they 'personally participated in the alleged violation.'" *Bryson v. Gonzales*, 534 F.3d 1282, 1289 (10th Cir. 2008) (quoting *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir.1996)). "[T]o establish supervisory liability, a plaintiff must show that (1) the defendant promulgated, created, implemented or possessed responsibility for

the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (internal quotation marks and citation omitted).

Plaintiff's claim against Defendant Moon rests on the allegation that "as mailroom supervisor [he] is responsible for the operation of that mailroom [ ] and subordinates." *See* Response (doc. #51, at page 13 of 15). Mr. Cordova makes no allegations that Defendant Moon directly participated in or knew of the alleged mailroom violations. Therefore, Claim Six fails to allege the personal participation necessary to state a claim under § 1983.

*D. Qualified Immunity*

Defendants Dowling, Laurence, Singh, Chamjock, Glissman, Vorwald, and Moon assert that they are entitled to qualified immunity from suit on Plaintiff's claims. Government officials are entitled to qualified immunity from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights which a reasonable person in their position would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

However, because the court finds that all Defendants should be dismissed on all claims, the court need not decide whether Defendants Dowling, Laurence, Singh, Chamjock, Glissman, Vorwald, and Moon are entitled to qualified immunity.

Accordingly, IT IS RECOMMENDED that:

1. "Defendants' Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Rule 12(b)(6), or Alternatively, for Summary Judgment on Claim 3 for Failure to Exhaust Administrative Remedies" (doc. #41) (filed December 5, 2011) be GRANTED.

2. Claim One be dismissed for failure to state a claim for relief for violation of the ADA or the Rehabilitation Act and as barred by the statute of limitations governing § 1983 claims.
3. Claim Two be dismissed as barred by the statute of limitations governing § 1983 claims.
4. Summary judgment be granted on Claim Three for failure to exhaust administrative remedies.
5. Claim Six be dismissed for failure to state a claim upon which relief can be granted.
6. No claims remaining, this civil action be closed.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the

magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999). (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morals-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED this 17th day of April, 2012.

BY THE COURT:

s/Craig B. Shaffer
United States Magistrate Judge